IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

IHAB ELGABI,

                Plaintiff,        Case No. 3:05 CV 7092

  -vs-

                                           MEMORANDUM   OPINION
TOLEDO AREA REGIONAL                      AMENDED
TRANSIT AUTHORITY,

                Defendant.

KATZ, J.

This matter is before the Court on Defendant's motion for summary judgment, Plaintiff's opposition, Defendant's reply and Plaintiff's response thereto. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, Defendant's motion is well taken.

**BACKGROUND**

Ihab Elgabi ("Elgabi") is of Egyptian national origin. Elgabi applied for employment as a driver with the Toledo Area Regional Transit Authority ("TARTA") and completed an application for employment in that regard on March 7, 2002. On the application, Elgabi listed a social security number ending in 9726. He responded to the questions on the application as follows:

    Other than for traffic violations, have you been convicted in a court of law?

  (Elgai answered) "No."

    Have you had any moving violations? (Elgabi answered) "No."

    At the end of the application, just above his signature, was the following

  statement:

>Do you fully understand that for the first 90 days of your employment, beginning with your In-Service Date, you will be on probation, which means that your continued employment will be at the discretion of TARTA? Yes: (to which Elgabi wrote yes and initialed).
>
>Do you authorize TARTA to make any investigation/background check it considers necessary in regard to your application? Yes: (to which Elgabi wrote yes and initialed).
>
>**I certify that such information contained in this application and all supporting documents is correct to the best of my knowledge and understand that falsification of employment records is grounds for dismissal regardless of the date such falsification is discovered.**

Under this last statement, Elgabi signed his name and dated his application.

On March 15, 2002, TARTA requested an independent criminal background and driving history be conducted by Data Research, Inc. TARTA provided Data Research with the information provided by Elgabi on his application. The report did not reveal any criminal or traffic offenses and covered the three years preceding the application.

In June 2002, Elgabi was hired into TARTA's June training class and the effective date of his employment was June 24, 2002. At that time he was promoted from a driver trainee to a part-time driver.

According to Elgabi, shortly after his employment at TARTA began, he also applied for a position with the Toledo Public Schools ("TPS"). In the application with TPS, Elgabi also used the same social security number as provided to TARTA and agreed to a criminal background check with the Federal Bureau of Investigation ("FBI"). The FBI check revealed a criminal conviction for domestic violence and an arrest for a firearms violation. Elgabi was informed by TPS that he was ineligible for employment due to his domestic violence conviction.

2

The director of TARTA's transportation, John Stewart, was advised by TPS about Elgabi's background check and the information was deemed "disturbing." (Gerald Bowsher Dep., p. 34.) Ultimately, TARTA acquired the information from TPS and confirmed it with the Oregon Police Department. Additionally, TARTA discovered conviction for a traffic offense. Gerald Bowsher ("Bowsher"), TARTA's Director of Human Resources also asked for a meeting with the FBI to review the data. Thereafter, Bowsher and the acting superintendent of TARTA, Gerald Austin ("Austin") made the decision to terminate Elgabi based upon falsification of his employment application. (Id., pp. 43-44.) Elgabi was terminated from his employment effective September 12, 2002.

The station supervisor, Timothy Butler, escorted Elgabi from the property and reported that Elgabi stated that he [Elgabi] "was a trained weapon and bomb specialist and what Mr. Bowsher did was wrong." (Bowsher Aff., ¶ 6.) Based upon this statement, Bowsher posted Elgabi's photograph with the following statement: "Attention: If you should see this man on TARTA property you are to notify a supervisor **immediately**. Name: Ihab Elgabi. Former Operator #1706." (Bowsher Dep., p. 51.)

After Elgabi's termination, the local ABC affiliate, Channel 13's I-Team undertook an investigation regarding the criminal records of TARTA drivers. Channel 13 advised TARTA that based upon its research, eighteen drivers had prior criminal and traffic offenses. TARTA then undertook its own investigation and determined that four of the eighteen drivers had not completely disclosed their criminal histories and those four drivers were terminated. A subsequent investigation by TARTA and unrestricted as to time, resulted in additional terminations of five drivers for falsification of their application.

3

In March 2005, Elgabi filed suit against TARTA alleging national origin discrimination under Title VII, 42 U.S.C. § 2000-e and the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02, seeking damages, reinstatement and injunctive relief.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some

4

type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*A. McDonnell Douglas Paradigm*

The Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), set forth the order for the presentation of proof in a Title VII case, which requires a plaintiff to

5

establish, by a preponderance of the evidence, a *prima facie* case of discrimination by indirect or circumstantial evidence. Having met that burden, a presumption arises to the effect that the employer unlawfully discriminated against the plaintiff. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981). The burden then shifts to the defendant to articulate a nondiscriminatory reason for the adverse actions taken against the plaintiff. *Id.* at 254. Where the defendant sets forth, through the introduction of admissible evidence, that the actions were taken for a legitimate nondiscriminatory reason, it becomes plaintiff's burden to prove by a preponderance of the evidence that the reason was actually a pretext for discrimination. *Id.* In a Title VII action, the plaintiff always maintains the "ultimate burden of persuasion." *Id.* at 511.

Alternatively, a plaintiff may establish a *prima facie* case by presenting direct evidence of discriminatory intent. *See, Terbovitz v. Fiscal Court of Adair County,* 825 F.2d 111 (6th Cir. 1987), *abrog'd on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)

*B. National Origin Discrimination*

It is unlawful under federal law for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . .national origin." 42 U.S.C. § 2000e-2(a)(1). In order to establish a *prima facie* case of discrimination on the basis of national origin, a plaintiff must establish the following: (1) that he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter,* 358 F.3d 408, 415 (6th Cir. 2004) (citation omitted). As

a plaintiff's evidentiary burden relative to state claims mirrors that of the federal claims, the Court uses the same analysis to address Plaintiff's state discrimination claims.[1]

The parties do not dispute the first three prongs of the *prima facie* test. The Court is satisfied that Plaintiff meets the first three factors as he is a member of protected class as an Egyptian national, he was qualified for the job and that he suffered an adverse employment action when he was terminated from employment. As the focus of the parties' briefs are on the fourth prong of the analysis, the Court turns to discuss that prong in greater detail.

1. Similarly-Situated

The Sixth Circuit, in *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992), discussed the similarly-situated analysis as follows:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-[protected] employees, the plaintiff must show that the "comparables" are similarly-situated *in all respects. Stotts v. Memphis Fire Department,* 858 F.2d 289 (6th Cir. 1988). Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating circumstances or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

---

[1] It is also unlawful under Ohio law "[f]or any employer, because of the . . . sex, national origin. . . [or] age. . . of any person . . . to discharge without cause . . . or otherwise to discriminate against that person with respect to hire, tenure, terms conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). The Ohio Supreme Court has held that the coverage of § 4112.02(A) is identical to the coverage of federal law prohibiting discrimination in the employment context. Thus, evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be demonstrated. *See Genaro v. Central Transp., Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782, 786 (Ohio 1999); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981); *see also, Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm' n,* 61 Ohio St.3d 607, 609-10, 575 N.E.2d 1164, 1167 (1991), *cert. denied,* 503 U.S. 906 (1992).

(Citations omitted.) (Emphasis in original.) However, the Sixth Circuit clarified this standard slightly by noting the following:

> The[] [*Mitchell*] factors generally are all relevant considerations in cases alleging differential disciplinary action. . . Court should not assume, however, that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevance of a particular aspect of the plaintiff's employment status and that of the non-protected employee.

*Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998) (citations omitted).

Moreover, this Circuit has also recognized the Supreme Court's guidance on this issue especially pertaining to disciplinary circumstances:

> The Supreme Court has noted that in comparing employment discipline decisions, "precise equivalence in culpability between employees" is not required. Rather, the plaintiff must simply show that the employees were engaged in misconduct of "comparable seriousness."

*Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 569 (6th Cir. 1999) citing *Harrison v. Metropolitan Gov't of Nashville and Davidson County,* 80 F.3d 1107, 1115 (6th Cir. 1996), *overruled on other grounds by Jackson v. Quanex Corp.,* 191 F.3d 647,667 (6th Cir. 1999).

In this instance, the Plaintiff contends that six employees serve as examples that comparable non-protected employees were treated better than Elgabi. The employees in the first group identified by the Plaintiff are Steven Traudt (Caucasion American) and Paul Waites (African American). Traudt applied for employment with TARTA in September 1997. In response to the same questions, Traudt listed a disorderly conduct conviction but omitted other criminal violations, including a conviction for aggravated vehicular homicide. Regarding the question of moving traffic violations, Traudt answered that he had none in the three years prior to the application. With regard to Waites, he completed an application with TARTA on May 2001.

8

Waites did not report any criminal convictions but reported three traffic moving violations. A subsequent review of Waites criminal history revealed criminal convictions including a conviction for obstructing official business and charges for disorderly conduct, carrying a concealed weapon and domestic violence all of which were dismissed. Both Traudt and Waites were terminated from their positions with TARTA. However, unlike the Plaintiff, Traudt and Waites were both members of the Amalgamated Transit Union ("Union") and both filed grievances with the Union. After proceeding through a grievance-arbitration process, Traudt and Waites were reinstated with no back-pay or benefits.

The second class of employees identified are Steven Villagomez ("Villagomez"), Shawn Turner ("Turner"), John Carswell ("Carswell'), and Marvin Smith ("Smith"). Each of these individuals failed to truthfully list the existence of moving violations on their records. For example, Carswell failed to disclose traffic violations for operations of a vehicle at stop signs, failure to control and obedience to traffic control devices. Villagomez failed to disclose violations for driving under suspension, failure to control, ability to stop an assured clear distance and a criminal charge of failure to register a dog or kennel. Turner failed to identify other traffic violations. Smith also failed to list all of his traffic violations on his application.

Bowsher testified that as TARTA learned of this information it could not afford to terminate all sixteen drivers at once as doing so would have had an impact upon its ability to maintain bus service. Coupled with the impact upon labor-management relations, TARTA decided to terminate those individuals who failed to disclose criminal offenses, such as Plaintiff.

The Plaintiff has not established that other non-protected employees were treated better than him under similar circumstances. There is no dispute that those employees who failed to

9

disclose criminal convictions were terminated. That two individuals, by virtue of their union status and the grievance procedure, were ultimately reinstated separates their circumstances from that of the Plaintiff herein. *See Washington v. Ford Motor Co.,* 35 Fed. Appx. 160, 163 (6th Cir. 2002) (a Caucasian employee who was reinstated after the grievance process was not similarly situated to the plaintiff, who had not filed a grievance). *See also, Cooper v. North Olmsted,* 795 F.2d 1265, 1270 (6th Cir. 1986) (district court improperly compared records of permanent employee not discharged and a probationary employee who was discharged); *Williams v. Cuomo,* 961 F.Supp. 1241, 1245 (N.D. Ill. 1997), *aff'd* 151 F.3d 1035 (7th Cir. 1998), *cert. denied,* 525 U.S. 1160 (1999) (affirming distinction in comparing permanent versus probationary employees under *McDonnell* analysis). Those employees who were less than forthcoming about their traffic violations are not similarly situated to Plaintiff as he failed to be truthful as to both criminal convictions *and* traffic violations. The relevance of the criminal convictions is the critical factor in this analysis and the record does not indicate that TARTA, after learning about Channel 13's investigation, treated any non-protected employees who failed to reveal this information better than the Plaintiff. In sum, the Plaintiff has failed to satisfy this fourth prong under the *prima facie* test.

      2. <u>Legitimate, Non-Discriminatory Reason For Discharge</u>

Assuming *arguendo* that Plaintiff has established a *prima facie* case for discrimination, the burden is on the Defendant to articulate and demonstrate a legitimate, non-discriminatory reason for termination. The employer meets this burden of production where "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision. . ." *Reeves*, 530 U.S. at 148.

In this instance, the Defendant learned that Plaintiff was not truthful on his employment application and that Elgabi used a different social security number on his application than the one attached to his criminal records. When confronted by TARTA as to the omissions on his employment application, Elgabi stated that the Social Security Administration issued him a second social security number. Elgabi also testified that he believed his convictions were no longer on his record and he saw no need to list them on the application. Taking into account TARTA's mandate as a public mass transit system which carries passengers, its duty to the public trust requires operation with the highest duty of care. When faced with a failure to list not only criminal convictions but traffic violations under a different social security number by an employee, TARTA reasonably believed on the particular circumstances before it and made a business determination to terminate Plaintiff's employment. As the Defendant has met its burden of production on its reason for termination, the burden shifts to the Plaintiff to demonstrate the reasons for termination were pretextual.

3. Pretext

To establish pretext, a plaintiff may meet their burden one of the three following ways:

The adverse employment action: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). In this case, the Plaintiff challenges the employer's reasons for discharge on the basis that the policy for discharge for falsifying an application was not consistently applied. The Plaintiff's assertion is incorrect regarding drivers who falsified/omitted their criminal convictions as those individuals would be comparable in relevant respect to Plaintiff Elgabi. The Plaintiff has not produced evidence to

11

overcome TARTA's honest belief that Elgabi falsified his application relative to both criminal convictions and traffic violations. The Plaintiff's erroneously believed he was entitled to omit this relevant information cannot cast the cloak of pretext upon the Defendant.

The Plaintiff also contends that the date of his termination, September 12, 2002, holds significance due to its proximity to the fateful day of September 11, 2001 and its connection to persons of middle Eastern origin. Coupled with the aggressiveness of Defendant's pursue of information from TPS, posting his picture on the premises upon his termination are all factors sufficient to raise an inference of pretext. This Court disagrees. The pursuit of information was premised by TPS itself and as TARTA had never before encountered such a circumstance, it deemed acquisition of the information vital as Plaintiff occupied a position which directly serviced the public. The posting of the picture is not, in this Court's view, relevant to his termination as the alleged remarks were made after he was terminated. The date in question alone, as Plaintiff points out is insufficient to establish pretext.

In sum, the Plaintiff's reasons for pretext, the Court finds he has not established pretext by a preponderance of the evidence.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment (Doc. No. 35) is granted and Defendant's motion to strike (Doc. No. 46) is denied as moot.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE